IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

MICHAEL PHELPS, on his own behalf and on behalf
of all similarly situated individuals,

    PLAINTIFF

v.                                                             CIVIL ACTION NO. 3:21-0417

ALLY FINANCIAL, INC.

    DEFENDANT

## FIRST AMENDED COMPLAINT

    1.    This case arises out of the systemic abusive loan-servicing practices of the Defendant, Ally Financial, Inc. ("herein Ally"). In particular, this case concerns the assessment by Ally of illegal "speed pay" fees to its West Virginia consumers who have their property loans serviced by Ally. In direct violation of West Virginia law, Ally regularly and systematically charges illegal and excessive speed pay fees to consumers who have made a payment via telephone, internet, or by money order. To enforce West Virginia law and to stop these abusive practices, Plaintiff filed the Complaint on his own behalf and on behalf of a class of West Virginia consumers who have had unlawful speed pay fees (also known as payment processing fees or pay-by-phone fees) charged to their property loan accounts. Pursuant to Federal Rule of Civil Procedure 15(a)(2), this Amended Complaint is filed with Defendant's written consent.

    2.    The Plaintiff, Michael Phelps is a resident of West Virginia. Mr. Phelps is visually impaired.

3.      The Defendant, Ally Financial, Inc., is a bank holding company having its principal offices in a state other than West Virginia and which does business in West Virginia.

4.      Mr. Phelps bought a 2017 Ford Fusion from River City Ford, in Lavalette, WV for his daughter's personal use.  Mr. Phelps signed a Retail Installment Sales Contract with River City Ford dated June 14, 2017 ("RISC").

5.      The RISC provided that Mr. Phelps would make regular monthly payments of $394.73.

6.      In 2019, the collection of Mr. Phelps' car loan was made by Ally.

7.      By letter dated September 13, 2019, Ally stated that Mr. Phelps owed the total amount of $1,336.25 due by September 26, 2019.

8.      Mr. Phelps called Ally about payment workout options. Ally told Mr. Phelps that they required immediate payment of at least $205.26 by certified check.  After Mr. Phelps explained his disability and limited mobility, Ally still insisted on a certified check.

9.      Mr. Phelps took on additional personal expense and considerable time to do as Ally requested and sent a certified check after visiting his bank in person.

10.     Despite doing as Ally requested, and after many phone calls with Ally staff to inquire about the certified check's receipt, Ally informed Mr. Phelps that his loan workout request had been rejected.

11.     Mr. Phelps received a statement that reflected a reduced monthly payment owed of $308.03.

12.     On June 5, 2020, Mr. Phelps used Ally's phone payment system to submit a $312.03 payment and also a $4.00 pay-by-phone fee. After sending payment, Mr. Phelps was sent a receipt stating payment had been made "to Ally Financial".

13. On August 14, 2020, Mr. Phelps used Ally's phone payment system to submit a $624.06 payment and also a $4.00 pay-by- phone fee. After sending payment, Mr. Phelps was sent a receipt stating payment had been made "to Ally Financial".

14. Although not generally known to the public, the typical cost for phone payment service through Western Union is approximately 50 cents. Consumers like Plaintiff thus pay far in excess of Western Union's actual costs for this service.

15. Western Union engages in private servicing agreements with debt collectors, like Ally, that provide either a low processing cost that is marked-up by Ally for profit, or a revenue sharing agreement between Ally or its parent companies, and Western Union, or its successor, ACI Worldwide.

16. Ally and Western Union, or its successor, ACI Worldwide, had a revenue sharing agreement that allowed Ally to profit from payment processing fees.

17. In its servicing agreements, ACI Worldwide "share[s] revenues with [its] business partners based on several factors related to overall value contribution in the delivery of the joint solution or payment type." ACI Worldwide 2020 10-k.

18. ACI Worldwide's "agreements with business partners include . . . transaction fee-based payment-enablement partnerships." *Id.*

19. To the extent Western Union, or its successor, ACI Worldwide, collects payment processing fees on Ally's behalf, it is acting as an agent of Ally.

20. Alternatively, Ally and Western Union, or its successor, ACI Worldwide, entered a joint venture when the servicing agreement was executed, which gave both parties control over the business enterprise and outlined the responsibilities of each party to profit from the payment processing fees.

21. Notwithstanding any private agreement between Ally and Western Union, the processing payment defrays Ally's costs of collection and shifts the financial burden of Ally's collection costs onto Mr. Phelps.

22. Mr. Phelps's RISC does not authorize the lender or any person collecting the debt on the lender's behalf to collect a payment processing fee.

23. Through his counsel, Mr. Phelps sent three different letters to Ally, the last dated November 3, 2020, explaining that the $4.00 fee is not authorized by Mr. Phelps' RISC and violated the West Virginia Consumer Credit and Protection Act ("WVCCPA").

24. Ally, through counsel, responded by letter dated December 17, 2020, refusing to provide any cure or relief to Mr. Phelps.

## CLASS ALLEGATIONS

25. Mr. Phelps brings this action on his own behalf and on behalf of all similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons in West Virginia (1) with property secured by a loan where the lender is Ally or is serviced by Ally, and (2) who were charged one or more payment processing fees.

26. Mr. Phelps reserves the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

27. Excluded from the Class are Defendant, and Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all mortgagors who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case should be assigned.

28. The members of the Class are so numerous that joinder is impractical.

While the exact number of members of the Class cannot be determined without discovery, Plaintiff believes that the Class consist of hundreds, if not thousands of members, the identity of whom, upon information and belief, can be readily determined upon review of records maintained by Defendant.

29. Plaintiff's claims are typical of the claims of other members of the Classes, in that they arise out of the same acts of Ally, namely collecting fees from borrowers that are not authorized by the underlying loan agreements or by West Virginia law. Plaintiff has suffered the harms alleged and have no interests antagonistic to the interests of any other member of the Class.

30. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

31. The predominating common questions of law and fact include:

    a. Whether, and in what amount, Ally may collect a payment processing fee from borrowers;

    b. Whether collecting such fees is authorized by the Plaintiff or class members' Security Instrument;

    c. Whether collecting such fees is authorized by any statute or regulation;

    d. Whether collecting Pay-to-Pay fees violates the WVCCPA;

    e. What is the proper method or methods by which to measure damages caused by Ally's violations; and

    f. Whether Ally should be enjoined from further collections, or attempted collections, of Pay-to-Pay fees from members of the Class.

32. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.

Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the members of the Class.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each of the Class Member's claims is small relative to the complexity of the litigation, and due to the financial resources of Ally, no member of the Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Ally's misconduct will proceed without remedy.

34. Even if members of the Class could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

35. Alternatively, certification is appropriate pursuant to Rule 23(b)(2) because it is clear that declaratory and injunctive relief is appropriate respecting the Class as a whole.

## COUNT I
### *VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT*

36. Mr. Phelps incorporates paragraphs 1 through 35 above as if fully set forth herein.

37. Mr. Phelps is a "person" who falls under the protection of Article 2 of the WVCCPA, and as a "consumer" under Section 46A-2-122(a).

38. Ally is a "debt collector" as defined by the WVCCPA under Section 46A-2-122(d) as an organization that engages directly in debt collection in Wayne County, WV.

39. Ally has engaged in violations of Article 2 of the WVCCPA, including but not limited to:

   a. Collecting or attempting to collect from Mr. Phelps all or any part of Ally's fee or charge for services rendered in violation of Section 46A-2-128(c);

   b. Collecting any charge, fee or expense incidental to the principal obligation unless such incidental fee, charge or expense is expressly authorized by the agreement creating the debt, the RISC and by statute or regulation, in violation of Section 46A-2-128(d); and

   c. Utilizing fraudulent, deceptive, or misleading representations or means in collecting an unauthorized extra payment processing fee, in violation of Section 46A-2-127.

40. Mr. Phelps and class members have been damaged financially by Ally's violations of the WVCCPA.

## COUNT II
### *VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING*

41. Mr. Phelps incorporates paragraphs 1 through 40 above as if fully set forth herein.

42. Implied in every contract is a duty of good faith and fair dealing, which prohibits either party from taking such action that denies the other party the benefit of the contract.

43. Ally became a party to the contract by becoming Mr. Phelps's lender or by assignment of the right to collect the debt from Mr. Phelps.

44. Ally routinely breaches its covenant of good faith and fair dealing by collecting extra payment processing fees not authorized in the underlying loan agreement.

45. Mr. Phelps and members of the class have been damages by Ally's violations of the covenant of good faith and fair dealing.

## DEMAND FOR RELIEF

Mr. Phelps demands from Ally:

    A. Actual damages for Mr. Phelps and class members for violations of the WVCCPA and for Ally's breach of the covenant of good faith and fair dealing;

    B. Statutory damages for Mr. Phelps and class members for violations of the WVCCPA for all such violations that have occurred;

    C. Injunctive Relief for Mr. Phelps and class members enjoining Ally collecting any further payment processing fee;

    D. Attorneys' fees and costs for Mr. Phelps and class members; and

    E. Any such further relief that the Court may grant as appropriate.

Respectfully submitted,

PLAINTIFF
BY COUNSEL

/s/ Patricia M. Kipnis
Patricia M. Kipnis (WVSB #12896)
Bailey & Glasser LLP
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
(856) 324-8219
pkipnis@baileyglasser.com

Kristina Thomas Whiteaker (Bar No. 9434)
THE GRUBB LAW GROUP, PLLC

1114 Kanawha Boulevard, East
Charleston, WV 25301
304-345-3356 (telephone)
304-345-3355 (facsimile)